———o———

SILAS BENT, Plaintiff in Error, *vs.* JOSEPH PETERS, Defendant in Error.

1. *Equity—Divestiture of legal title—Substantial equity must be shown.*—In order to divest the legal title to land out of a purchaser in good faith who has made valuable improvements, plaintiff must show substantial equity.

### Error to St. Louis Circuit Court.

*Hitchcock, Lubke & Player*, were of counsel for Plaintiff in Error in the Supreme Court.

*S. N. Holliday*, for Defendant in Error.

WAGNER, Judge, delivered the opinion of the court.

This was a bill in equity for the purpose of having title to a certain lot vested in the plaintiff. The bill states that in September, 1865, Erastus Wells sold to one Prottsman the lot in controversy, with others, and gave him a title bond to

make a deed therefor on payment of the purchase money; that in April, 1866, defendants with full knowledge of the sale and bond, fraudulently took and received of Wells a deed for the lot, for the purpose of defrauding Prottsman, or by collusion with Prottsman to enable him to cheat and defraud his creditors, he being largely indebted; that the deed was taken by the defendants for the one or the other, plaintiff not knowing which; that the deed was executed to fictitious persons for a fictitious corporation; that in June, 1869, Prottsman, who was notoriously insolvent and known so to be by the defendants, executed to them his voluntary deed for the premises; that afterwards, in 1869, plaintiff recovered a judgment against Prottsman, in the Green County Circuit Court, upon which execution was issued, and that in 1870 he caused the said real estate to be sold and became the purchaser thereof, and received a sheriff's deed for the same. The prayer was that the defendants be divested of the title and that the same be vested in the plaintiff.

The answer was a denial of all the allegations in the bill, and set up as a defense that on the 10th day of April, 1860, they purchased, of Prottsman and Wells, the lot in controversy; that the title was at the time in Wells, who had given a bond for a deed to Prottsman; that defendants purchased from agents who represented Prottsman and Wells, and Wells made a deed to defendants, with the knowledge and consent of Prottsman, as by the bond he was bound to do; that the defendants bought the land in good faith, and paid the entire purchase money to Wells and received a warranty deed from him, and that the names of two of the defendants were spelled erroneously, and both of those errors were corrected in the subsequent deed of Prottsman, and that his deed was obtained for that purpose simply; that plaintiff was informed at the time of his purchase that Prottsman had no interest in the land, and that he bought with full knowledge.

The evidence shows that Wells, on the 16th day of September, 1865, sold the real estate in question, together with other lands, to Prottsman, for $3,000, five hundred of which

was paid in cash, and the balance was to be paid in three equal annual payments. The title bond contained a provision that if Prottsman, before any of the notes became due should make sale of any of the real estate, then Wells should make to the purchaser or purchasers a good and sufficient warranty deed at Prottsman's request, and receive the proceeds of the sale and credit the same on the notes remaining unpaid. On the 10th day of April, 1866, Prottsman, by his agent Holmes, sold the real estate in question to the reservoir congregation of the Cumberland Presbyterian Church of St. Louis for $1,701.50, the full value thereof, and by his agent received the money from the congregation, and paid it over to Wells, who at Prottsman's request acting by his agent, executed and delivered to defendants as trustees for the congregation, a warranty deed conveying the title to the land. The misspelling in the names of two of the grantees, was clearly done by mistake and through ignorance, and was not intentional. The purchase appears to have been made in entire good faith and with no intention of defrauding any body. In a year and a half afterwards, the congregation for whom the defendants acted, took possession of the lot and erected thereon a building of the value of $3,000.00 and they have been in possession ever since.

The deed of Prottsman made in June, 1869, was a quit-claim deed and made at defendant's request, and was for the purpose of correcting the mistakes in the names of the grantees. At that time Prottsman appears to have been largely in debt. Plaintiff's judgment was recovered in May, 1870, and he bid off the property for twenty-five dollars, and, at the time, Wells notified him that Prottsman had no interest in it.

The court dismissed the bill and it is difficult to perceive how it could have done otherwise. Not a single allegation as to fraud or bad faith was sustained by the proof. Defendants purchased the property as trustees, and the innocent mistake made in the spelling of two of their names could not affect the title of the real parties in interest—the beneficiaries. They obtained the whole legal title from a person who had

the right to convey it and paid a valuable consideration for the same. The second deed from Prottsman need not be taken into the account. It was worthless, for he had no title to convey. After the defendants have acquired, in good faith, the legal title which together with the improvements has cost them nearly $5,000, the plaintiff does not present any very strong claim to relief when he asks to have the title vested in him on a bid for $25.00, which originated from a judgment, rendered against a man who did not possess the shadow of a claim to the property. Cases may have been presented showing less equity, but I confess that I have never seen them.

The judgment should be affirmed, all the judges concur.